IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TIMOTHY S. JACKSON,

        Plaintiff,

v.                                                                  Case No. 3:20-cv-00864

SCOTT EPLIN (District Manager);
MARK ELSWICK (Supervisor);
JEFF A. STINNETT, Superintendent;
KATHY SMITH, Job Coordinator;
BRIAN GREENWOOD; DANTE CLARK;
JENNIFER HENDERSON, DOC; and
CHARLESTON CORRECTIONAL
CENTER AND JAIL,[1]

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Plaintiff Timothy Jackson's complaint and amended complaint filed pursuant to 42 U.S.C. § 1983 and Defendants' motions to dismiss and for summary judgment. (ECF Nos. 2, 21, 30, 32, 54, 63, 66). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the motion to dismiss filed

---

[1] According to the West Virginia Division of Corrections website, the defendant identified by Plaintiff as Charleston Work Release is properly named the Charleston Correctional Center and Jail, and the warden identified by Plaintiff as Jeffrey Stenet is actually Superintendent Jeff A. Stinnett. Therefore, the Clerk of Court is **ORDERED** to correct the style of the case to reflect the defendants' proper names/titles.

by Defendant Charleston Correctional Center and Jail, (ECF No. 21); **DENY** the motion for summary judgment filed by Defendants Clark, Greenwood, Henderson, Smith, and Stinnett, (ECF No. 32); **DENY, in part,** and **GRANT, in part**, the motion to dismiss filed by Defendants Elswick and Eplin, (ECF No. 30); **GRANT** the motion to dismiss of Scott Eplin, (ECF No. 63); and **GRANT** the motion to dismiss of Dante Clark and Jeff A. Stinnett, (ECF No. 66). The undersigned additionally recommends that the presiding District Judge **DISMISS**, with prejudice, the complaints, (ECF Nos. 2, 54), against Defendants Charleston Correctional Center and Jail, Scott Eplin, Jeff A. Stinnett, and Dante Clark and **REMOVE** these individuals from the style of the case, while allowing discovery to proceed against the remaining defendants.

## I.    Relevant Facts and Procedural History

### A. *Complaint*

Timothy Jackson filed the instant complaint pursuant to 42 U.S.C. § 1983 on December 23, 2020. (ECF No. 2). The suit arises out of a series of incidents that began on June 18, 2019. (*Id*. at 4). According to Jackson, on that date, while he was working for the Department of Highways ("DOH") through the work release program offered by the Charleston Correctional Center and Jail ("CCC"), Defendant Mark Elswick assigned him to work on a steep hillside near the interstate bridge in Huntington, West Virginia. (*Id*.). Jackson protested this assignment, noting that pins in both of his ankles made him unable to do "that kind of work." (*Id*. at 4). He was compelled to work on the hillside anyway, and subsequently fell and broke an ankle pin. (*Id*.).

On June 23, 2019, Elswick "fired" Jackson from the Department of Highways. (*Id*. at 5). Subsequently, Defendant Kathy Smith, the work release job coordinator, "wrote [Jackson] up" for refusing to work despite Jackson having provided Smith with

medical proof of his injury. Jackson had a disciplinary hearing before Defendant Brian Greenwood, who refused to consider Jackson's pre-existing medical condition or his subsequent on-the-job injury. Greenwood found Jackson guilty of the disciplinary charge, which resulted in Jackson being "sent to a maximum security facility" and placed in "the hole," or administrative segregation, for 60 days. (*Id.* at 5–6). He further alleges that Defendant Clark, later identified as Dannette Clark, arranged an appointment with an orthopedic specialist for Jackson, but he was prevented from going to this appointment by Defendant Jennifer Henderson. (*Id.* at 6). Defendants Henderson and Clark also allegedly prevented Jackson from seeking medical treatment at "health right care." (*Id.*). Jackson contends that once he arrived at Huttonsville Correctional Center he attempted to appeal the adverse disciplinary action, but the warden, Defendant Jeff A. Stinnett, "denied it and refused to look into my situation." (*Id.* at 7). For relief, Jackson asks for $200,000.00 for emotional distress caused by his sixty-day period in solitary confinement and $200,000.00 for pain, suffering, and emotional distress caused by the denial of medical treatment, as well as punitive damages. (*Id.* at 5).

On April 20, 2021, Jackson filed an amended pleading. (ECF No. 54). In this document, he provides additional factual allegations against Defendants Elswick, Smith, Greenwood and Henderson. Jackson contends that on the day Defendant Elswick assigned him to work on the aforementioned steep hillside, it had been raining and the hillside was "extremely muddy," causing Jackson to fall and become injured, after which he was fired. (*Id.* at 1). He asks for $1 million in punitive damages for this incident. (*Id.*).

As to Defendant Smith, Jackson claims she abused her power by punishing him for refusing to work even after he explained and offered proof of his injury. (*Id.*). According to Jackson, Defendant Greenwood likewise abused his power by sentencing

3

Jackson to 60 days of administrative segregation and moving him to a higher-security facility. (*Id.* at 1–2). Defendant Henderson allegedly abused her power by refusing to allow Jackson to attend a medical appointment or obtain emergency care when his foot swelled up. (*Id.* at 2). He seeks $1 million in punitive damages from Defendants Smith, Greenwood, and Henderson. (*Id.*). Of note, Jackson does not include any allegations against the CCC, or Defendants Eplin, Clark, and Stinnett in the amended pleading. (*Id.*).

The defendants in this matter, each of whom is employed by or is otherwise connected to the State of West Virginia, have responded. Defendant CCC filed a motion to dismiss the complaint, as did Defendants Elswick and Eplin ("DOH Defendants"). (ECF Nos. 21, 30). Defendant Eplin also filed a second motion to dismiss, seeking disposal of the amended complaint. (ECF No. 63). Defendants Clark, Greenwood, Henderson, Smith, and Stinnett ("DCR Defendants") filed a joint motion for summary judgment as to the complaint, and Defendants Clark and Stinnett filed a separate, additional motion to dismiss the amended complaint. (ECF Nos. 32, 66). The motions, responses, and replies are summarized below.

### B. Defendant Charleston Correctional Center and Jail's Motion to Dismiss

On January 25, 2021, Defendant CCC filed a motion to dismiss and accompanying memorandum of law on the basis that it cannot be sued under § 1983 because it is merely a building and not a "person" for the purposes of that statute. (ECF Nos. 21, 22). On February 8, 2021, Jackson responded to this motion, countering that he is not suing a building but is suing the warden "for allowing his staff to abuse their power." (ECF No. 28). He further contends that the CCC charges for rent and laundry services and has a

source of income. (*Id.*). Following a motion hearing, Defendant CCC submitted a supplemental memorandum of law explaining that the correct title of the facility is the Charleston Correctional Center and Jail and stating that it is owned and operated by the West Virginia Division of Corrections and Rehabilitation ("DCR"); therefore, it is ineligible for suit under § 1983. (ECF No. 43). On April 20, 2021, Jackson filed a supplement to his original pleadings which excluded Defendant CCC from the list of named defendants. (ECF No. 54).

### C. DCR Defendants' Answer, Motion for Summary Judgment, and Motion to Dismiss

On January 22, 2021, the DCR Defendants filed an answer to Jackson's complaint, asserting twenty-three defenses and demanding a jury trial. (ECF No. 13). On February 11, 2021, the DCR Defendants filed a motion for summary judgment and accompanying memorandum of law. (ECF Nos. 32, 33). First, the DCR Defendants assert that they are not "persons" under § 1983 because they are agents of the State of West Virginia, which is not subject to suit. (ECF No. 33 at 4). They also claim that Jackson's complaint must be dismissed because he failed to exhaust his administrative remedies. (*Id.* at 4–7). In response, Jackson contends that he could not exhaust his administrative remedies because he "was not provided with the needed forms to file an appeal of his grievance after his appeal was rejected" by Defendant Stinnett. (ECF No. 35 at 1). In reply, the DCR Defendants argue that Jackson's contention is without merit because he admitted in his complaint that he did not file a grievance. (ECF No. 37 at 1). Further, the DCR Defendants assert that no additional form is required to take an appeal from an adverse grievance decision and that, if such a form were required, it would have been available to Jackson. (*Id.* at 2).

5

On March 17, 2021, the undersigned issued an order informing Jackson of his right and obligation to file a response demonstrating a factual dispute pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 40). On March 30, 2021, Jackson responded to the order. (ECF No. 45). He contends that he was not given a choice of paperwork by the "jail counselor," and wonders how he could have been "expected to file under a more correct statute when the counselor only hands out one packet." (*Id.* at 1). Jackson also states that after Defendant Stinnett denied his appeal, Jackson was not given a chance to respond because he had been placed in administrative segregation and by the time he was released, "the amount of time for further appeal had passed" and there "was no way for [Jackson] to file any sort of grievance or appeal, nor was he advised of any way to proceed." (*Id.* at 1–2).

After Jackson filed his amended pleading, two of the DCR Defendants, Dante Clark and Jeff A. Stinnett, filed a Motion to Dismiss the amended complaint. (ECF No. 66). Clark and Stinnett point out that, while they are named in the amended complaint, Jackson includes no factual allegations implicating them. (ECF No. 67 at 5). These defendants further reiterate their argument that Jackson failed to exhaust administrative remedies; therefore, his complaint should be summarily dismissed. (*Id.* at 5-8).

### *D. DOH Defendants' Motions to Dismiss*

On February 10, 2021, Defendants Mark Elswick and Scott Eplin ("DOH Defendants") filed a motion to dismiss and accompanying memorandum of law. (ECF Nos. 30, 31). Therein, the DOH Defendants contend that Jackson did not present any allegations or causes of action against Defendant Eplin, and as such, cannot satisfy the pleading standard required under Rule 8(a)(2) of the Federal Rules of Civil Procedure.

(ECF No. 31 at 4). Further, the DOH Defendants argue that they did not engage in illegal conduct toward Jackson because the agreement between the DCR and DOH requires the DOH to report inmate injuries as well as failure to perform work, and Jackson admitted he was unable to perform the work required of him. (*Id.* at 5–6). The DOH Defendants dispute Jackson's characterization of his removal from the work crew as a "firing," given that inmates in the custody of the DCR are not employees of the DOH. (*Id.* at 6–7). The DOH Defendants additionally claim that Jackson did not exhaust his administrative remedies prior to filing this action as required by 42 U.S.C. § 1997e(a). (*Id.* at 7). Next, the DOH Defendants contend that they are officials of a state agency and cannot be sued in their official capacity because they are not "persons" under § 1983. (*Id.* at 7–8). Finally, the DOH Defendants assert that they are entitled to qualified immunity given that Jackson has not pled facts that show they violated any clearly established federal right. (*Id.* at 9–10).

On February 24, 2021, Jackson responded to the DOH Defendants' motion to dismiss. (ECF No. 36). Jackson disputed their characterization of his removal from the DOH work crew, insisting that Defendant Elswick did fire him, as noted by Defendant Kathy Smith at his disciplinary hearing. (*Id.* at 1). He also contends that "it's on the [supervisor] to [provide] a safe work [environment]." (*Id.*). Jackson adds that when he is working with the DOH, "it is the responsibility of the DOH" not to put him in dangerous places. (*Id.* at 2).

On March 5, 2021, the DOH Defendants replied to Jackson's response. (ECF No. 38). They again state that Defendant Elswick did not have the authority to fire Jackson as he was not an employee of the DOH at the time, and maintain that his removal from the work crew, regardless of whether he was "fired," was proper because Jackson was

unable to perform the work required. (*Id*. at 1–3). Next, the DOH Defendants assert that Jackson did not address all the arguments in the motion to dismiss, and therefore their motion should be granted as to those claims. (*Id*. at 3–4). They claim that Jackson did not respond to their arguments concerning his supposed failure to meet the minimum pleading standard, lack of allegations against Defendant Eplin, failure to exhaust his administrative remedies, lack of available remedy against the defendants acting in their official capacities, and entitlement to qualified immunity. (*Id*.). The DOH Defendants contend that these claims should be considered unopposed. (*Id*. at 4).

In response to Jackson's amended pleading, DOH Defendant Eplin again moved for dismissal of the claims against him. (ECF No. 63). Eplin noted that the amended pleading continued to name him as a defendant, but still failed to include any allegations against him. (ECF No. 64). Eplin reasserted his prior arguments that Jackson failed to exhaust available state remedies and is precluded from suing Eplin in his official capacity. (*Id*.).

### E. Motion Hearing

On March 18, 2021, the undersigned held a motion hearing to address the pending motions above. (ECF No. 42). At the hearing, the parties discussed Jackson's claims and the defendants' motions as well as the next phase of litigation. (*Id*.).

## II.  Standards of Review

The DOH Defendants and Defendant CCC move to dismiss Jackson's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion under this rule tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

Accordingly, the Court will assume that the facts alleged in the complaint and amended pleading are true and will draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Because the purpose of Rule 12(b)(6) is limited to assessing the adequacy of a complaint, the court is not "to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation omitted). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the court "take[s] the facts in the light most favorable to the plaintiff, ... [the court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks enough facts on its face to state a plausible claim to relief. *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and

citations omitted).

Courts are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

The DCR Defendants move for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 501 U.S. at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden

on the moving party; for, it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson, Inc.,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

## III.  <u>Discussion</u>

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal markings omitted). Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right,

privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at \*2 (D.S.C. Sept. 8, 2010); *see also American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. at 50.

### A. Defendant Charleston Correctional Center and Jail's Motion to Dismiss

Defendant CCC moves to dismiss the complaint against it, with prejudice, on the basis that it is merely a building, and not a person under § 1983. (ECF No. 22). In its supplemental memorandum, it explains that it is one among a number of facilities owned and operated by the DCR. (ECF No. 43). After the March 18, 2021 motion hearing, Jackson filed amended pleadings that reflect his acquiescence on this point; Charleston Work Release is no longer included in the list of defendants. (ECF No. 54).

The undersigned notes that Defendant CCC is correct in its assertion that it does not fall within the definition of "person" under § 1983. Accordingly, the CCC cannot be sued for monetary damages under the statute. *Roach v. Burch*, 825 F. Supp. 116 (N.D.W. Va. 1993); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Cantley v. Western Regional Jail and Correctional Facility Authority*, 728 F.Supp.2d 803 (S.D.W. Va. 2010). Moreover, as an arm of the State of West Virginia, the CCC is immune from suit in federal court pursuant to the doctrine of sovereign immunity contained in the Eleventh Amendment to the United States Constitution. As this Court has found on

many prior occasions, the immunity enjoyed by an arm or agency of the State of West Virginia has not been waived in federal court, and it precludes Jackson's claims against the CCC. *See, e.g., Hughes v. W. Reg'l Jail*, No. 3:20-CV-00307, 2020 WL 7050378, at *3-*4 (S.D.W. Va. Nov. 6, 2020), *report and recommendation adopted,* No. CV 3:20-0307, 2020 WL 7050362 (S.D.W. Va. Dec. 1, 2020); *Hagley v. W. Reg'l Jail*, No. 3:20-CV-00468, 2020 WL 6692988, at *4-*5 (S.D.W. Va. Oct. 21, 2020), *report and recommendation adopted,* No. CV 3:20-0468, 2020 WL 6688865 (S.D.W. Va. Nov. 12, 2020); *Snyder v. Lakin Corr. Ctr.*, No. 3:18-CV-01021, 2019 WL 3543793, at *6 (S.D.W. Va. July 5, 2019), *report and recommendation adopted,* No. CV 3:18-1021, 2019 WL 3543686 (S.D.W. Va. Aug. 2, 2019). Therefore, the undersigned **FINDS** that Defendant Charleston Correctional Center and Jail is exempt from suit under § 1983, and further **FINDS** that Jackson's claim against it should be dismissed, with prejudice.

### B.  *DCR Defendants' Motion for Summary Judgment*

#### 1. *Official Capacity Claims*

The DCR Defendants claim that they are agents of the State of West Virginia who were acting in their official capacity at all relevant times, and therefore cannot be considered a "person" under § 1983. (ECF No. 33 at 4). They cite to *Will v. Mich. Dept. of State Police*, which holds that state officials acting in their official capacities are not "persons" under § 1983. *See* 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted).

The Supreme Court later clarified its holding in *Will*, making a distinction between officials acting in their official capacities and officials acting in their personal

capacities under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a state. *Will*, 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer*, 502 U.S. 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity specifically, the Court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is

14

being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* Court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* Court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* Court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

From the face of the complaint, it is clear that Jackson is suing the DCR Defendants in their personal, not official, capacities. He contends that Defendants Clark and Henderson prevented him from obtaining medical treatment for his injuries. (ECF No. 2 at 6). He alleges Defendants Smith and Greenwood abused their power by punishing him for refusing to work even after he explained that he had been injured. (ECF No. 54 at 1–2). As to Defendant Stinnett, Jackson states, albeit not in response to the DCR Defendants' arguments, that he is suing the warden "for allowing his staff to abuse their power." (ECF No. 28). Furthermore, Jackson asks for damages, which, under *Biggs*, indicates that this suit is against the DCR Defendants in their personal capacity. A liberal reading of the pleadings demonstrates that Jackson does not present allegations against the DCR Defendants in their official capacity. Therefore, the undersigned **FINDS** that the DCR Defendants are "persons" under § 1983.

## 2. *Exhaustion of Administrative Remedies*

The DCR Defendants assert that Jackson failed to exhaust his administrative remedies as to the claims presented. (ECF No. 33 at 6–7). Jackson counters that he was not provided with the proper forms to appeal his grievance, and furthermore that he was confined to administrative segregation and unable to access the grievance procedure during the time for appeal. (ECF Nos. 35, 45). The Prison Litigation Reform Act (PLRA) requires that "[n]o action shall be brought with respect to prison conditions under section 1983 or this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While it is undisputed that Jackson has not exhausted his administrative remedies as to his claims in this matter, such failure to exhaust cannot form the basis for summary judgment when, as here, Jackson asserts that the administrative remedy was not available to him. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The *Ross* Court provided examples of unavailable remedies, noting "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's

16

pursuit of relief renders the administrative process unavailable." *Id.*

At this stage of the litigation, the parties have not had an opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the court, it would be premature to dismiss Jackson's claim for failure to exhaust administrative remedies. *See Custis v. Davis,* 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). For that reason, the undersigned **FINDS** that the record currently does not support dismissal of the complaint on the basis of failure to exhaust administrative remedies.

17

The DCR Defendants characterize Jackson's claim that he was not provided with the proper forms or otherwise did not have the ability to use the grievance procedure as "a fabrication" and "a falsehood," (ECF No. 37 at 1–2), but such accusations are irrelevant in the context of a motion for summary judgment because, in considering the motion, the Court draws all reasonable inferences in favor of Jackson. Accordingly, the undersigned **FINDS** that a genuine dispute of material fact exists as to the availability of administrative remedies, thus precluding a grant of summary judgment, and further **FINDS** that the motion should be denied on this ground.

### C. DOH Defendants' Motion to Dismiss

The DOH Defendants seek dismissal of Jackson's complaint on the basis that the complaint does not meet minimum pleading requirements; the DOH Defendants did not engage in illegal conduct; Jackson failed to exhaust his administrative remedies; they are not "persons" under § 1983; and they are entitled to qualified immunity. (ECF No. 31). Each argument is addressed below.

### 1. Minimum Pleading Requirements

The DOH Defendants assert that Jackson's pleadings are insufficient to state a claim against them. (ECF No. 31 at 4–5). They note that the only reference Jackson makes as to Defendant Eplin is in identifying him as a party, and Jackson wholly fails to state any factual allegations against him. (*Id.* at 4). Further, the DOH Defendants claim that Jackson does not establish or allege that either defendant violated his constitutional rights. (*Id.* at 5).

With respect to Defendant Eplin, the DOH Defendants are correct that the complaint does not satisfy the minimum pleading requirements. The record is replete with allegations of alleged wrongful conduct on the part of Defendant Elswick, but

Jackson does not lodge any accusations against Defendant Eplin. While Defendant Eplin is described as a "District Manager," it is a matter of well-settled law that the doctrine of respondeat superior, which attaches liability to a supervisor for the wrongful acts of supervisees, does not apply in suits brought pursuant to § 1983. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Instead, supervisory liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983, a plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Because Jackson does not provide any factual allegations in support of supervisory liability as to Defendant Eplin, the undersigned **FINDS** that this § 1983 action must be dismissed as to him.

As for Defendant Elswick, however, Jackson *does* provide specific factual allegations sufficient to state a claim. Jackson proffers that Defendant Elswick required him to work in an unsafe environment—namely, a steep, muddy hillside—despite Jackson's explicit warning that his medical history made the assignment hazardous for him. The complaint against Elswick therefore meets the standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As will be discussed more thoroughly below, incarcerated people have a right

under the Eight Amendment to reasonable safety measures. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, the undersigned **FINDS** that Jackson meets minimum pleading requirements as to Defendant Elswick.

### 2. *Allegations of Illegal Acts*

The DOH Defendants next contend that Jackson's complaint makes no claims of illegal acts as to Defendant Eplin and only "vague assertions" against Defendant Elswick. (ECF No. 31 at 5). As to the claims against Defendant Elswick, the DOH Defendants assert that Elswick did no illegal act because he was required to report Jackson's injury to the DCR as per the agreement between the two agencies, and that Defendant Elswick could not have "fired" Jackson because Jackson was not an employee of the DOH. (*Id.* at 5–6).

As discussed above, the DOH Defendants are correct that Jackson has not alleged any illegal activity on the part of Defendant Eplin. However, the allegations against Defendant Elswick *are* allegations of illegal acts. The DOH Defendants acknowledge that Jackson's pleadings include allegations that Defendant Elswick knowingly put Jackson in danger by requiring him to work on a steep, muddy hillside despite his medical issues, but do not address this, focusing solely on the "illegal firing" aspect of the complaint. (ECF No. 31 at 6). They note that Defendant Elswick was well within bounds to remove Jackson from the work crew because he admitted he "wasn't able to do that kind of work," (*Id.*), but this deduction is devoid of context. According to Jackson, he informed Defendant Elswick that he was not able to work on the hillside because of the pins in his feet, but Defendant Elswick required him to work anyway, and Jackson was consequently injured. Jackson's removal from the work crew—regardless of whether he was "fired"—occurred not after he explained that the assignment was unsafe, but after

he was hurt in the unsafe conditions. Jackson's claim against Defendant Elswick clearly concerns this apparent disregard for Jackson's wellbeing and not merely his removal from the work crew.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Incarcerated people are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds by Bell v. Wolfish*, 441 U.S. 520. *See also Farmer v. Brennan*, 511 U.S. at 832 (noting that the Eight Amendment imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates'"). To establish a violation of the Eighth Amendment when challenging the conditions of confinement, an inmate must allege (1) an objectively "sufficiently serious" deprivation and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission...result[s] in the denial 'of the minimal civilized measure of life's necessities.'" *Id.* at 298 (internal citations omitted). To establish the subjective component, an inmate must allege and prove a defendant's consciousness of the risk of harm. *See Farmer*, 511 U.S. at 840. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012). It "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Rish v. Johnson*, 131

F.3d 1092, 1096 (4th Cir. 1997); *see also Banks v. Gore*, 738 F. App'x 766, 770 (4th Cir. 2018). Put simply, the individuals named in the complaint would have a sufficiently culpable state of mind if they were each aware of an excessive risk of harm to the plaintiff's health or safety, but disregarded it. *See Wilson*, 501 U.S. at 298; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.").

Jackson's complaint as to Defendant Elswick meets both prongs. He alleges that the work conditions at the job site were unsafe for him and that Defendant Elswick knowingly placed him in harm's way. At the time, Jackson was in the custody of the DCR, and Elswick was responsible for Jackson's conditions of confinement for all intents and purposes. To the extent that Jackson challenges his supposed firing from the work crew, the DOH Defendants are correct that removal from the work crew is not a cognizable constitutional claim on its own, but Jackson is asking for damages in part as a result of the injuries he sustained and consequences he faced from allegedly unconstitutional acts. Therefore, the undersigned **FINDS** that the DOH Defendants' motion to dismiss the claims against Defendant Elswick cannot be granted on this basis.

### 3.  *Failure to Exhaust Administrative Remedies*

The DOH Defendants next contend that Jackson's claim should be dismissed because he failed to exhaust his administrative remedies. (ECF No. 31 at 7). Later, they assert that Jackson waived his right to oppose this argument because he did not address it in his response to their motion. (ECF No. 38 at 4). As a pro se plaintiff, Jackson's pleadings are liberally construed. He addresses the failure to exhaust administrative

remedies at various points in his filings, and asserts that the remedy procedure was not available to him due to circumstances outside his control. (ECF Nos. 35, 45). This Court must draw reasonable inferences in favor of Jackson, and therefore, as discussed *supra* in analysis of the DCR Defendants' motion for summary judgment, **FINDS** that the failure to exhaust administrative remedies cannot form the basis of a motion to dismiss.

### 4. *Official Capacity Claims*

Like the DCR Defendants, the DOH Defendants argue that they are not "persons" under § 1983 because at the time of the relevant factual allegations they were acting as officials of a state agency. (ECF No. 31 at 7–8). As to Defendant Eplin, it indeed appears that Jackson is suing him in his official capacity; in the initial complaint Jackson makes no factual allegations against Defendant Eplin and in his response to the motion to dismiss Jackson advances only that "it is the [responsibility] of the DOH to keep [him] safe" when he is working. (ECF No. 36 at 1–2). Clearly, the sole connection between the events giving rise to the constitutional violations alleged and Defendant Eplin is Eplin's position at the DOH. Jackson indeed sues Defendant Eplin in his official capacity and as discussed above, supervisory liability is inapplicable in this case. Accordingly, the undersigned **FINDS** that Defendant Eplin is not a "person" under § 1983 and therefore cannot be sued in this matter.

However, Jackson properly states a claim against Defendant Elswick in his personal capacity. Jackson is not alleging that Defendant Elswick acted in accordance with government policy, he sues for monetary damages, and the DOH Defendants assert qualified immunity as a defense, and therefore it can be fairly ascertained that Jackson intends to hold Defendant Elswick personally liable. *Biggs*, 66 F.3d at 61. Therefore, the

undersigned **FINDS** that Defendant Elswick is a "person" under § 1983 and is a proper defendant in this matter.

### 5. Qualified Immunity

The DOH Defendants argue that they are entitled to qualified immunity in this action because Jackson fails to articulate any facts demonstrating that they engaged in conduct which violated Jackson's clearly established rights. (ECF No. 31 at 8). They explain that they understand Jackson's claim to be for the violation of his rights "when he was terminated from his work assignment with DOH." (*Id.* at 8–9). As an initial matter, the DOH Defendants read Jackson's complaint far too narrowly; he complains not only about his removal from the work crew and the ensuing events but also about the injury he suffered after Defendant Elswick commanded him to work in an unsafe environment.

Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. If a Court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the Court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a Court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

To repeat, the Eighth Amendment "imposes duties on [prison] officials who must

provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

Under the Eighth Amendment, "a reasonable person would have known" that Jackson has a right to safety and care for his medical needs. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ...proscribed by the Eighth Amendment") (citation omitted); *Youngberg v. Romeo*, 457 U.S. 307, 318 (1982) (holding that "there is a constitutionally protected liberty interest in safety"); *Santana v. Collazo*, 714 F.2d 1172, 1183 (1st Cir. 1983) (relying on *Romero* for the proposition that "[p]ersons involuntarily confined by the state have a constitutional

right to safe conditions of confinement"); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (finding violation of a clearly-established right under the Eighth Amendment when hazardous conditions and poor lighting in prison "seriously threaten[ed] the safety and security of inmates"). Therefore, the right was clearly established. On the facts alleged here, Jackson establishes that his right to safety was violated when Defendant Elswick knowingly placed him on a steep hillside to work after being advised that Jackosn had a physical condition that made the environment unsafe for him. Thus, the undersigned **FINDS** that, when taking the allegations of the complaint and amended pleading as true, Defendant Elswick is not protected by qualified immunity. However, because Jackson makes no factual allegations concerning the actions of Defendant Eplin, let alone actions that violate a clearly-established right, even if Defendant Eplin were a proper defendant in this matter the undersigned **FINDS** that he would be entitled to immunity. As such, the undersigned **FINDS** that the DOH Defendants' motion should be granted as to Defendant Eplin.

### D.  Motion of Defendant Eplin to Dismiss

In response to the amended pleading, Defendant Eplin again pointed out the lack of factual allegations supporting a claim against him. As explained above, the undersigned agrees that Jackson fails to assert a *prima facie* case against Eplin. For that reason, the undersigned **FINDS** that Defendant Eplin's motion to dismiss, (ECF No. 63), is well-founded and should be granted. The undersigned further **FINDS** that the complaint and amended pleading should be dismissed as to Defendant Eplin and that he should be removed as a defendant in this action.

### E.  Motion of Defendants Stinnett and Clark to Dismiss

After receipt of Jackson's amended pleading, Defendants Stinnett and Clark

renewed their request for dismissal of the case against them on the basis that the amended pleading contained no factual allegations against them. (ECF No. 66, 67). Generally, an amended pleading supersedes the initial pleading. However, *pro se* litigants do not always appreciate that procedural rule and do not intend for the amended pleading to entirely replace the initial complaint. Accordingly, for the purposes of this Proposed Findings and Recommendations, the undersigned has read the complaint and amended pleading together to determine if Jackson asserted enough factual support for his claims against Stinnett and Clark. The undersigned **FINDS** that Jackson has not provided the Court with anything but bare bones conclusions as to the alleged wrongdoing of Clark and Stinnet. Therefore, their Motion to Dismiss should be granted.

With respect to Stinnett, Jackson's sole claim is that Stinnett denied Jackson's appeal of Defendant Greenwood's disciplinary finding and "refused to look into [Jackson's] situation." (ECF No. 2 at 7). This allegation fails to state a viable claim, because prisoners do not have a constitutional right to a grievance procedure, and the denial of a grievance does not give rise to a § 1983 claim. *See Atkins v. Maryland Div. of Corr.*, No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("The mere fact that [a warden] denied [the plaintiff's] grievances does not alone impose liability."); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"); *also Matney v. Haysi Reg'l Jail*, No. 7:19CV00067, 2020 WL 185168, at *3 (W.D. Va. Jan. 13, 2020). Furthermore, prisoners do not have a constitutional right to any particular type of complaint investigation by a prison official. *See  Boose v. W. Reg'l Jail*, No. 3:18-CV-

28

01480, 2019 WL 5681226, at *6 (S.D.W. Va. Oct. 8, 2019), *report and recommendation adopted,* 2019 WL 5681193 (S.D.W. Va. Oct. 31, 2019) (citing *Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994) (stating that there is not a "fundamental right requiring prison administrators investigate prisoner complaints."); *and Witt v. Redman*, No. 7:17-CV-00438, 2018 WL 4374220, at *3 (W.D. Va. Sept. 13, 2018), *appeal dismissed,* 754 F. App'x 222 (4th Cir. 2019) ("[A]n inmate cannot bring a § 1983 claim that officials inadequately investigated a grievance or gave inaccurate responses to a grievance or an appeal. The court will grant the defendants' motion to dismiss as to any claim that they did not comply with a provision of a prison policy or the grievance procedures.")).

As to Defendant Clark, Jackson states that Clark "set up an appointment [for Jackson] with a orthpoedic specialist," but Jackson was prevented from attending that appointment by Defendant Henderson. (ECF No. 2 at 6). Jackson adds that he made a request to be seen at Health Right, but this request was denied by Clark and Henderson. (*Id.*). These allegations, without more, are insufficient to state a claim against Clark. Indeed, the first allegation indicates that Clark attempted to obtain specialized medical care for Jackson, which is the antithesis of a constitutional violation. The second statement is so lacking in detail and context that it falls short of a viable claim, even when construing it liberally and in the light most beneficial to Jackson. There are likely many reasons why Jackson would not be permitted to see a specific health care provider, such as Health Right, and some of those reasons may be perfectly appropriate. The fact that Jackson included no further allegations against Clark in the amended pleading and failed to flesh out the two-sentence allegations against Clark in the complaint are added reasons to grant Clark's motion to dismiss. (ECF No. 66). Accordingly, even when

reading the complaint and amended pleading together, the undersigned **FINDS** that Jackson fails to state sufficient factual allegations to support a claim against Defendant Clark.

**IV.    Proposal and Recommendations**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that:

1.    The Motion to Dismiss filed by the Defendant Charleston Correctional Center and Jail, (ECF No. 21), be **GRANTED**;

2.    The Motion to Dismiss of the DOH Defendants, (ECF No. 30), be **DENIED, in part,** and **GRANTED, in part**, with Defendant Eplin being dismissed, but not Defendant Elswick;

3.    The Motion for Summary Judgment by the DCR Defendants, (ECF No. 32), be **DENIED**;

4.    The second Motion to Dismiss of Scott Eplin, (ECF No. 63), be **GRANTED;**

5.    The Motion to Dismiss of Defendants Stinnett and Clark, (ECF No. 66), be **GRANTED**;

6.    The complaint and amended complaint, (ECF Nos. 2, 54), be **DISMISSED**, with prejudice, against the following Defendants: the Charleston Correctional Center and Jail, Scott Eplin, Jeff A. Stinnett, and Dante Clark, and that they be **REMOVED** from the style of the case; and

7.    Discovery proceed as to Defendants Mark Elswick, Kathy Smith, Brian Greenwood, and Jennifer Henderson.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendants, counsel of record, and any unrepresented parties.

**FILED:**  May 10, 2021

Cheryl A. Eifert
United States Magistrate Judge