IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

TIMOTHY S. JACKSON,

                Plaintiff,

v.                                  CIVIL ACTION NO.   3:20-cv-00864

MARK ELSWICK (Supervisor);
KATHY SMITH, Job Coordinator;
BRIAN GREENWOOD; and
JENNIFER HENERSON, DOC,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

       This matter was referred to the Honorable Judge Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has submitted her Proposed Findings and Recommendations ("PF&R") and recommended that this Court grant Defendants' Motions for Summary Judgment (ECF Nos. 88, 90) and that Plaintiff's Amended Complaint (ECF No. 54) be dismissed, removing this action from the docket of the Court. Plaintiff filed an Objection the Magistrate Judge Eifert's PF&R. ECF No. 104. For the reasons provided, the Court **DENIES** the Objection (ECF No. 104) **and ADOPTS AND INCORPORATES** herein the PF&R.

**BACKGROUND**

       As noted in the PF&R, Plaintiff Timothy S. Jackson (Plaintiff) seeks redress for a number of alleged constitutional violations that took place during his incarceration. Plaintiff filed his first complaint pursuant to 42 U.S.C. § 1983 on December 23, 2020 (ECF No. 2), and subsequently

filed an amended complaint on April 20, 2021 (ECF No. 54), in which he provides additional factual allegations against Defendants Elswick, Smith, Greenwood, and Henderson.

In January 2019, Plaintiff, while incarcerated at the Charleston Correctional Center and Jail ("CCCJ"), was assigned to work for the West Virginia Department of Highways ("DOH") as part of an inmate road crew. ECF No. 98-1 at 4. Plaintiff contends that on June 14, 2019, he was forced to operate a weed eater on a steep, slippery hillside, despite his protests that a previous injury made it unsafe for him to work in such conditions. *Id.* at 5-6. Plaintiff alleges that he personally explained to the DOH supervisor, Defendant Mark Elswick ("Defendant Elswick"), that he had plates and screws in his ankles and feet and could not work on uneven terrain. ECF No. 54 at 1; ECF No. 98-1 at 5-6. Notwithstanding this discussion, Plaintiff was assigned to work on the hillside, where he lost his footing and fell, causing a pin in his left ankle to break. ECF No. 96 at 1–2. Plaintiff did not report for work the following Monday, June 17, 2019, and instead sought medical treatment at the Charleston Area Medical Center ("CAMC"). ECF No. 98-1 at 6.

On June 27, 2019, CCCJ employee Defendant Kathy Smith ("Defendant Smith") charged Plaintiff in a Disciplinary Incident Report with a violation of Disciplinary Rule 2.03 for refusal to work, stating that Defendant Elswick did not want Plaintiff to return to work with the DOH because of his "lack of effort and his constant complaints of the work he was asked to perform." ECF No. 98-3 at 2. A disciplinary hearing was held before a West Virginia Division of Corrections and Rehabilitation ("DCR") Hearing Officer, Defendant Brian Greenwood ("Defendant Greenwood"), on July 2, 2019, and Plaintiff was found guilty of the violation. ECF No. 88-2 at 1–2. He was punished with a thirty-day loss of privileges and transfer to a more secure facility. *Id.* In a separate disciplinary hearing on a later date, Plaintiff was found guilty of refusing to provide a urine sample for screening and sentenced to a period of administrative segregation. ECF No. 95-6; ECF No. 95-

7. He was transferred to Huttonsville Correctional Center ("HCC") after his second disciplinary charge. ECF No. 98-1 at 14–17.

Plaintiff was released on parole from HCC in December 2019. He was subsequently arrested on other unrelated charges and housed at the Western Regional Jail and Correctional Center ("WRJ"). *Id.* at 12–13. While incarcerated at the WRJ, Plaintiff filed the instant lawsuit on December 23, 2020, and filed an amended complaint on April 20, 2021. ECF Nos. 1, 2, 54. Claims against some of the original defendants have since been dismissed, leaving Defendants Smith, Greenwood, and DCR employee Jennifer Henderson ("Defendant Henderson") (collectively referred to as the "DCR Defendants"), and Defendant Elswick from the DOH as defendants. ECF Nos. 68, 70.

## STANDARD OF REVIEW

Where a party is proceeding *pro se*, the Court will liberally construe his pleadings and objections. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This Court must "make a *de novo* determination of those portions of the . . . [magistrate judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In doing so, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court, however, is not required to review the factual or legal conclusions of the Magistrate Judge to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nor must the Court review *de novo* "general and conclusory" objections; instead, objections must raise specific errors in the PF&R. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (citing *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)) ("[V]ague objections to the magistrate judge's findings prevent[] the district court from focusing on disputed issues and thus render[] the initial referral to the

magistrate judge useless."). Finally, the Court possesses the wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). With this framework in mind, the Court turns to a consideration of Plaintiff's pending objections.

## DISCUSSION

Plaintiff raises several Objections to Magistrate Judge Eifert's PF&R. ECF No. 104. The Court will address each Objection in detail below.

1. Objection 1

Plaintiff's first objection states:

> The DCR Defendants and DOH Defendant are responsible for their actions against Mr. Jackson, and the consequences that Mr. Jackson endured from their misuse of power, despite their opinion that they are afforded immunity, because they were acting agents of the state.

ECF No. 104. This objection is an assertion of how Plaintiff views the matter and a reiteration of his position that Defendants are not entitled to judicial immunity. *See* ECF No. 95 at 2. He points to nothing specific in the PF&R; rather, this objection is a mere conclusion of his belief that Defendants are responsible for the alleged violation of his rights. Because this is not a specific objection pointing to an error in the PF&R, this objection is **DENIED**.

2. Objection 2

Plaintiff's second objection states:

> Not only were his basic rights (which incarcerated inmates are still entitled to) violated, but by the misuse of power by the DCR Defendants and the DOH defendant violated the DOC policies held by each facility, but also Mr. Jackson's rights afforded to him by the ADA (Americans with Disability Act) as a (diagnosed) intellectually disabled person. Mr. Jackson's intellectual disabilities were long ago diagnosed, and he has been receiving SSI for them before his incarceration. The ADA maintains that the rights that individuals with intellectual disabilities have, are still to be given to incarcerated inmates who have these disabilities.

-4-

> However, Mr. Jackson was not afforded those rights. (The ADA
> recommendations and rights have been attached to this response).

ECF No. 104. To the Court's knowledge, this is the first time Plaintiff has raised the fact of an

intellectual disability. Nor has Plaintiff provided documentation regarding an intellectual disability

in his responses to the Defendants' Motions for Summary Judgment. *See* ECF Nos. 95, 96. This is

also the first time he raises an Americans with Disabilities Act (ADA) claim.

Plaintiff cannot raise claims that were not previously alleged or addressed in the PF&R.

Such claims must be raised in the complaint and cannot be raised for the first time in objections.

*Wilkerson v. Target Corp.*, 578 F. Supp. 2d 835, 837 (S.D.W. Va. 2008). Objection 2 is **DENIED**.

   3.   <u>Objections 3, 4, and 5</u>

Plaintiff's next objections relate to his exhaustion of administrative remedies. The third

objection states:

> That while the DCR Defendants disagree, Mr. Jackson did try to the
> very best of his ability and capabilities, to file and exhaust ALL
> available administrative remedies. Due to Mr. Jackson's diagnosed
> intellectual disabilities, he requires help and guidance by others in
> order to read, understand and follow basic instructions and policies.
> When Mr. Jackson filed paperwork, or various appeals he had
> received help from other inmates in order to do so. Often times, the
> help he received was for them to write up the appropriate forms for
> him, or to advise him step by step of how to try to do it himself. This
> can be evidenced by comparison between forms turned in to CCCJ
> by Mr. Jackson.

ECF No. 104. This objection asserts that Plaintiff was unable to satisfy the exhaustion requirement

because of an intellectual disability. However, as the Court has explained, Plaintiff raises

intellectual disability for the first time in this objection.

The Southern District of West Virginia has, in the past, refused to consider arguments

raised for the first time in an objection to a Magistrate Judge's PF&R. *See Keitt v. Ormond*, No.

5:06-cv-01069, 2008 WL 4964770, at *1 (S.D.W. Va. Nov. 13, 2008) ("'[R]eview of a Magistrate

[Judge]'s ruling . . . does not permit consideration of issues not raised before the Magistrate [Judge] . . . . A magistrate [judge]'s decision should not be disturbed on the basis of arguments not presented to him.'") (quoting *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991)). However, the Fourth Circuit has opined that it has an obligation to review de novo "any issue to which proper objection is made . . . regardless of whether they were raised before the magistrate [judge]." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992); *see also Deakins v. Pack*, 957 F. Supp. 2d 703, 735 (S.D.W. Va. 2013) (reviewing newly raised arguments in objections to a PF&R).

Plaintiff was required to first exhaust administrative remedies at his place of confinement before bringing a civil action in accordance with the West Virginia Prisoner Litigation Reform Act. W. Va. Code § 25-1A-1, *et seq*.; *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005). Exhaustion requires a "final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2. To complete grievance procedures, an inmate must submit a G-1 Grievance Form to the Unit Manager within fifteen days of the occurrence. If the response is unfavorable, an appeal may be taken to the Warden or Administrator within five days by filing a G-2 Grievance Form. If this too is unfavorable, a final appeal may be taken to the Commissioner or designee of Corrections. This entire process must be completed within sixty days. *Sullivan v. King*, No. CV 3:17-02347, 2018 WL 651815, at *5 (S.D.W. Va. Jan 8, 2018), *report and recommendation adopted*, No. CV 3:17-2347, 2018 WL 650217 (S.D.W. Va. Jan 31, 2018).

Plaintiff concedes that he did not complete the administrative remedy process for any claims in the amended complaint. ECF No. 95 at 2; ECF No. 96 at 2. He offers no support for the

assertion that an intellectual disability prevented him from complying with the exhaustion requirement. This unsubstantiated assertion does not undermine Magistrate Judge Eifert's finding that Plaintiff did not exhaust his administrative remedies. *See Brothers of Wheel M.C. Executive Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 518 n.8 (S.D.W. Va. 2012) (noting that unsubstantiated allegations in objections to a Magistrate Judge's PF&R were irrelevant); *see Opportunities Development Group, LLC v. Andruss*, No. 1:14-cv-62, 2015 WL 2089841, at *3 (E.D. Va. Apr. 30, 2015). Objection three is **DENIED**.

The fourth objection states:

> That while Mr. Jackson did try to exhaust all available remedies as required by DOC policy, he was unable to do so to satisfactory results. He did try on a few occasions to speak to the appropriate officials in BOTH facilities and was unable to get an appropriate and satisfactory resolution and was denied even basic conversations with them.

ECF No. 104. This objection merely reiterates arguments Plaintiff has already made before the Magistrate Judge. *See* ECF No. 95 ("Mr. Jackson tried to follow the procedure, however, due to his transfer to HCC, he was unable to follow the appropriate steps to dispute the wrongful termination, his writeups for 'failure to work' and 'refusal to drug screen' and his subsequent punishment for said writeups . . . . However, Mr. Jackson did attempt to speak to Warden Stinnett regarding these issues and did file an appeal for solitary confinement he was sentenced to, both were denied to Mr. Jackson."); *see* ECF No. 96 ("[D]ue to Mr. Jackson's transfer to Huttonsville Correctional Facility, he was unable" to file a grievance. "However, Mr. Jackson did try to file paperwork requesting to speak with Warden Stinnett at the Charleston Correctional Center about the situation but was denied the opportunity. Mr. Jackson also tried to speak to Ms. Smith about this situation and was unable to receive an appropriate solution."). Plaintiff raises no specific issues with Magistrate Judge Eifert's reasoning in finding that he did not exhaust administrative

remedies, and the Court agrees with the findings in the PF&R. Therefore, Objection four is

**DENIED**.

The fifth objection states:

> That the opinion of the DCR Defendants, that he "simply made no effort to seek redress through the grievance process" is categorically false. Mr. Jackson tried to speak to Ms. Smith BEFORE his work accident to discuss the problem he was having with his ankles on the hillside, and she refused to speak to him (on one occasion she literally shut the door in his face, when he requested to speak with her). Mr. Jackson tried to speak to her, as well as the other appropriate officials to try to resolve the issue (including not only the warden of CCCJ but also HCC where he was transferred to), but could not get any resolution.

ECF No. 104. Again, this objection simply reiterates points Plaintiff has already raised before the

Magistrate Judge. *See* ECF Nos. 95, 96, Plaintiff simply disagrees with the findings without

pointing to any specific error in the PF&R. Specific steps are required to exhaust administrative

remedies, and Plaintiff did not complete these steps. The Court agrees with Magistrate Judge

Eifert's findings that the administrative remedies were not exhausted. Therefore, Objection five is

**DENIED**.

4. <u>Objection 6</u>

Plaintiff's sixth objection states:

> That while the DCR Defendants discovery may be complete, that discovery/evidence has not been clearly given to Mr. Jackson. As a further point of contention, Mr. Jackson has still not been given ALL the discovery he requested (and the DCR Defendants were ordered by the Court to provide to Mr. Jackson). The DCR Defendants have stated that they no longer have, or do not know the whereabouts of such ordered evidence.

ECF No. 104. In this objection, it appears that Plaintiff is referencing his Motion to Compel

Discovery Responses, ECF No. 83. In that motion, he sought: 1) the results of his urine screens;

2) a copy of the policies and procedures of the West Virginia Division of Corrections; 3) cassette

tape of a hearing held on August 2, 2019; 4) log books dated June 19, 2019 and July 8, 2019; and 5) video footage taken on July 8, 2019 and June 19, 2019. *Id.* Magistrate Judge Eifert granted in part and denied in part this motion. ECF No. 85. The Defendants stated that the urine screens had been produced, they did not possess video footage or log books, and Plaintiff would need to specify which WV Division of Corrections policies he sought. *Id.* Magistrate Judge Eifert granted the motion directing Defendants to provide information regarding the individuals or entities that possess video footage and log books and to produce a cassette taping of the hearing that Plaintiff sought, if that item was in their possession. *Id.* Defendants responded to the order by asserting that they had no information regarding the entities that possess the video footage and log books and were not in possession of a cassette tape. ECF No. 86. It does not appear that Plaintiff ever clarified which policies he sought.

This issue has been raised and resolved before the Magistrate Judge. Additionally, this Objection points to no error in the PF&R. An objection must point to specific error by the magistrate judge in the PF&R—because Plaintiff did not do so here, "de novo review is unnecessary." *McPherson*, 605 F. Supp. 2d at 749. Therefore, Objection six is **DENIED**.

5. Objection 7

Plaintiff's seventh objection states:

> That he told Mr. Elswick on two occasions, both in front of witnesses (the witness list was previously submitted by Mr. Jackson to the Court) and by a physical showing of his scars and ankle to Mr. Elswick. He also explained to Mr. Elswick that he was able to do all work required by him for DOH, except working on steep hillsides. Mr. Jackson further contends that Mr. Elswick had no complaints about Mr. Jackson's work ethic or abilities UNTIL Mr. Jackson got injured at work. At that time, Mr. Elswick made his first and only complaint against Mr. Jackson to Ms. Smith. The action that Mr. Elswick made by making NO complaints about Mr. Jackson in the six months he worked under Mr. Elswick on the DOH crew, then making one to Ms. Smith

> upon Mr. Jackson's injury is in direct violation of the policy that
> Mr. Jackson signed when he began working for the DOH crew.
> (Previously filed witness list by Mr. Jackson has been attached to
> this response).

ECF No. 104. Again, Plaintiff reiterates arguments already raised before the Magistrate Judge and

points to no errors in the reasoning in the PF&R. *See* ECF Nos. 95, 96.

The Court agrees with the Magistrate Judge's reasoning on this issue. The Eighth

Amendment protects individuals against the infliction of "cruel and usual punishments." U.S.

CONST. amend. VIII. To establish a violation of the Eighth Amendment, an inmate must allege 1)

an objectively "sufficiently serious" deprivation and 2) that prison officials subjectively acted with

deliberate indifference to the inmate's health and safety. *Wilson v. Seiter*, 501 U.S. 294, 297–99

(1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . .

result[s] in the denial 'of the minimal civilized measure of life's necessities.'" *Id.* at 298 (internal

citations omitted). The subjective component requires that an inmate allege and prove a

defendant's consciousness of the risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). It

"requires that a prison official actually know of and disregard an objectively serious condition,

medical need, or risk of harm." *Rish v. Johnson*, 131 F.2d 1092, 1096 (4th Cir. 1997). This Court

agrees with the Magistrate Judge's opinion: the evidence does not establish that Defendant Elswick

was aware that Plaintiff's pre-existing medical condition allegedly placed him at an excessive risk

of harm when working on hillsides. Plaintiff explained at deposition that his ankle injury occurred

in 2003 and he had not received treatment for it in more than fifteen years. ECF No. 98-1 at 5. He

also conceded that there was no medical excuse or documentation noting he was physically unable

to perform the tasks on the DOH work crew. *Id.* Although Plaintiff asserts that he told Defendant

Elswick about the pins and plates in his ankle from this injury, there is no evidence to support the

conclusion that his over fifteen-year-old ankle injury placed him at greater risk than other inmates performing the same tasks.

There is also a lack of evidence establishing that Defendant Elswick had the subjective knowledge that Plaintiff would be at an excessive risk of harm if he performed the tasks assigned to him. There were no documented incidents during the six months Plaintiff worked on this crew prior to his fall that would have indicated he was at excessive risk. Additionally, the contract between the DCR and the DOH required the DCR to select inmates for work crews who were physically and mentally equipped to do the work, showing that Defendant Elswick's subjective belief was that Plaintiff was capable of performing the assigned tasks. Plaintiff also fails to show that Defendant Elswick directed him to work on the hillside that was slippery due to recent rainfall. He admitted that Defendant Elswick was not present the day he fell. ECF No. 98-1 at 5. Plaintiff simply does not support his Eighth Amendment violation claim with evidence in the record.

Further, the wrongful termination claim is not cognizable under § 1983. "[I]nmates do not have a constitutional right to a prison job, and in turn, the deprivation of a prison job states no independent constitutional claim." *Patel v. Moron*, 987 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995)). This principle also applies to work release. *See Beasley v. Duncil*, 792 F. Supp. 485, 486–87 (S.D.W. Va. 1992), *aff'd sub nom. Hundley v. Skaff*, 9 F.3d 1106 (4th Cir. 1993). The DCR has the authority to terminate an inmate's participation in work release and Plaintiff had no protected right to that position. And, as noted in the PF&R, contrary to Plaintiff's claims, inmates on work release are not entitled to workers' compensation benefits. *See Crawford v. W. Va. Dep't of Corr.-Work Release*, 239 W. Va. 374, 380 (2017) (citing W. Va. Code § 23-4-1e(b)). The Court agrees with

Magistrate Judge Eifert's opinion. Additionally, the Court notes that this claim is precluded because of Plaintiff's failure to exhaust administrative remedies.

Plaintiff's Objection seven is **DENIED**.

6. Objection 8

Plaintiff's eighth objection states:

> That while the DCR and DOH acknowledge in their contract with each other, that inmates performing services under this agreement were not state employees, the inmates are still entitled to safe working conditions, at their capability levels. Mr. Jackson also further contends that while the DCR and DOH contract states one thing, the job contract that Mr. Jackson signed for this position is very different (attached to this response), and does not inform the inmates that if they are injured at work for the DOH (after making below minimum wage like other jobs), that due to the contract between DCR and DOH, basic rights to safe working conditions or expectations will not be honored, and that with no previous complaints lodged (despite the policy stating the opposite was required), the inmates can (and in Mr. Jackson's case did) lose their job and receive a writeup.

ECF No. 104. This objection appears to speak to Plaintiff's Eighth Amendment and wrongful termination claims. As this Court has discussed, there is simply no evidence in the record supporting the claim of an Eighth Amendment violation. Plaintiff's wrongful termination claim is not cognizable under § 1983, and additionally, the statute prohibiting employers from terminating injured employees does not apply to Plaintiff's DOH work. *See* W. Va. Code 23-5A-3. Additionally, Plaintiff did not exhaust his administrative remedies. Objection eight is **DENIED**.

7. Objection 9

Plaintiff's ninth objection states:

> Not only did Mr. Jackson report his work injury to his onsite DOH supervisor Mr. Hall, but it was also witnessed by several other inmates on the DOH crew. Mr. Jackson also advised the supervising officers about his injury and workplace incident, when he returned back to the facility. Mr. Hall should have written an incident report but did not for some unexplained reason.

-12-

ECF No. 104. The Court interprets this objection as relating to Plaintiff's wrongful termination claim, in which he asserts he was fired after his injury. While this claim cannot be properly raised because of Plaintiff's failure to exhaust administrative remedies, the Court agrees with the Magistrate Judge's findings that such a claim is not cognizable under § 1983 and that the workers' compensation provisions relied upon by Plaintiff, which prohibit employers from terminating injured employees, do not apply to his DOH work. W. Va. Code § 23-5A-3(a). Objection nine is **DENIED**.

8. <u>Objection 10</u>

Plaintiff's tenth objection states:

> While Mr. Elswick may not have been physically on site, when Mr. Jackson fell, it was his direct order to Mr. Hall the day of the accident (as well as other days) that Mr. Jackson was to be on the hillside with the other inmates on the DOH crew, despite Mr. Elswick's first hand knowledge of Mr. Jackson's instability on his ankles on hillside slopes. Mr. Elswick, also drove by the job site the day of Mr. Jackson's accident on multiple occasions, in his daughter's vehicle (which is evidenced by witness testimony), and would call Mr. Hall in regards to what he saw, as he drove by.

ECF No. 104. This objection does not point to any specific error in the PF&R. Rather, it reiterates factual contentions already reviewed by the Magistrate Judge. *See* ECF No. 96. This objection relates to Plaintiff's claim under the Eighth Amendment. But as this Court has already reiterated, and as found by Magistrate Judge Eifert, Plaintiff does not support it with evidence in the record. Plaintiff does not establish that Defendant Elswick was aware that the pins and plates in Plaintiff's ankle placed him at an excessive risk; rather, he had worked on the assignment for six months and had no documented medical excuse. Nor is there evidence supporting the conclusion that, because Defendant Elswick knew of the pins and plates in Plaintiff's ankle, he believed Plaintiff to be at excessive risk of harm performing his assignments. The Court agrees with the findings in the PF&R. Additionally, Plaintiff did not exhaust administrative remedies. Objection ten is **DENIED**.

9. Objection 11

Plaintiff's eleventh objection states:

> That while Mr. Jackson was notified of the Disciplinary Hearing
> for the writeup he received for losing his DOH job, as well as his
> right to call witnesses and/or cross examine. Mr. Jackson was
> denied that right, which is afforded to inmates and is evidence in
> writing on the paperwork given to inmates outlining their rights in
> a disciplinary hearing.

ECF No. 104. Plaintiff asserts that he was denied his right to call and cross examine witnesses.

However, he provides no evidence that he attempted to call or cross examine any witnesses. Thus,

this objection is unsubstantiated. Objection eleven is **DENIED**.

10. Objection 12

Plaintiff's twelfth objection states:

> That his right to medical treatment was impacted by Offer [sic]
> Hendershots refusal to allow him to go to his scheduled follow up
> for his pain and injured ankle (as well as a medical condition that
> was causing and still is causing urinary issues).

ECF No. 104. The Court understands this objection to relate to Plaintiff's claims against Defendant

Henderson, in which he claims that Defendant Henderson "abused her power" by preventing him

from obtaining medical care for his foot. ECF No. 54 at 2. Plaintiff's testimony shows that, on the

day of his doctor's appointment to obtain the results of his x-ray and to get his medical records,

Defendant Henderson made him attend a hearing, requiring the appointment to be rescheduled to

two days later. ECF No. 98-1 at 15–18.

As Magistrate Judge Eifert notes, the refusal to let Plaintiff attend his appointment on July

8, 2019, at most gave rise to a delay—not a denial—of care. Further, Plaintiff cannot point to any

evidence showing he suffered from this delay in care. The rescheduled appointment was a routine

follow up and did not relate to a serious and immediate medical need. Again, Court also notes that

Plaintiff did not exhaust his administrative remedies.

-14-

Therefore, Objection twelve is **DENIED**.

11. <u>Objection 13</u>

Plaintiff's thirteenth objection states:

> That the writeup that Mr. Jackson received (2.03 Refusal to
> work/Attend Class and Program) when he lost his job due to his
> injury and ensuing complaint by Mr. Elswick, was not an accurate
> writeup and he was found guilty of a false charge for it. Mr.
> Jackson did not refuse to work, he was injured and had been placed
> on light duty due to that injury and this is evidence by the medical
> report, as well as the light duty slip he received from the ER, and
> also why a follow up appointment was required for Mr. Jackson to
> check the healing, as well as to further discuss the urinary issue
> that Mr. Jackson was going through. DOC policy states that
> writeup charge 2.03–Refusal to Work/Attend Class and Program:
> No inmate shall refuse a work detail or assignment, or refuse to
> carry out required assignments, work orders, or instructions, or
> leave a place of assignment including programs or classes without
> permission from the person in charge or be absent from work
> without authorization or violate terms of his/her work contract.
> (This policy is attached to this response). Mr. Jackson did none of
> these things. He simply got injured at work. He was not even
> informed for several days, that he had lost his job because Ms.
> Smith refused to communicate with him, despite Mr. Jackson
> requesting to speak to her and even going to her office to discuss
> his injury with her and being refused entry.

ECF No. 104. This objection appears to raise a claim of a civil rights violation based on Defendant Smith's filing of a disciplinary charge against Plaintiff. However, merely filing a disciplinary charge does not by itself violate a prisoner's constitutional or civil rights. As long as the prisoner has the opportunity to be heard and to rebut the charge, there is no violation even when the charges are false and the prisoner loses a protected liberty interest. *See, e.g.*, *Priutt v. FCI Morgantown*, No. 1:20CV228, 2020 WL 11232160, at *6 (N.D.W. Va. Sept. 28, 2020), *report and recommendation adopted*, No. 1:20-CV-228, 2021 WL 4303679 (N.D.W. Va. Sept. 21, 2021) ("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.") (citing *Freeman v. Rideout*, 808 F.2d 949, 952 – 53 (2d Cir. 1986) (holding that "the mere

-15-

The Court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to the Honorable Judge Cheryl A. Eifert, United States Magistrate Judge; all counsel of record; and any unrepresented parties.

ENTER:        August 18, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-17-